No. 5573.

| 67 | 679 |
|----|-----|
| 88 | 327 |

S. A. OWENS v. MISSOURI PACIFIC RAILWAY COMPANY.

1. VERDICT—JUDGMENT.—When a verdict is rendered on evidence conflicting regarding the issue to be determined, it will not be disturbed on appeal except for errors in the proceedings of the court.

2. MEASURE OF DAMAGES—OVERFLOW.—Ordinarily the measure of damages for overflowing land by an embankment for a railway improperly constructed, is the loss resulting to the owner from each successive flood. A different rule prevails when the damage consists in permanent injury to the land itself; in such a case the measure of damages is the difference between the value of the land immediately before the erection of the embankment, and its value after all the damage caused by the obstruction to the water flow had been done. See opinion for a charge of court, held correct, as embracing substantially the law as above stated.

3. PRACTICE.—In order to subject the action of the trial court to revision on appeal, it must be excepted to at the time. The office of the bill of exceptions is to show the proceedings of the court which do not otherwise appear of record, and the mode of its authentication being provided by law, the mere statement of the judge, although written by him and signed officially, can not be received as its substitute.

4. COMPROMISE VERDICT.—That a verdict rendered in a suit for the recovery of damages for a tort in a case where the evidence bearing on the issue was conflicting, was the result of a compromise of the conflicting opinions of the jurors, affords no ground for reversal.

5. CHARGE OF COURT.—A charge of court which directs the attention of the jury to a feature of the case presented on conflicting evidence under the pending issue, without assuming that it is established by evidence, but for the purpose of announcing the law applicable thereto, is not a charge on the weight of evidence.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

S. A. Owens brought this suit to recover damages for the destruction by overflow of appellant's pasture, which embraced about two hundred acres of land. Appellee constructed its road, which consisted of a solid embankment from three and one-half to fourteen feet high, and it was alleged that appellee negligently and willfully failed to fix proper culverts and sluices in the construction of said embankment such as the natural lay of the land required for the drainage thereof, and that, owing to such negligent construction, appellant's pasture was, on Decem-

ber 13, 1881, ruined by overflow, and the grasses on the land killed, and the use of the pasture completely destroyed, to appellant's damage thirty thousand dollars. It was alleged that Dry Pond was used by appellant for pasturing his own stock and also for pasturing the stock of other people for hire, and it was worth three hundred and fifty dollars per month for such purposes; that the water remained over the land from December 13, 1881, until July or August, 1883; that it was then dry from July or August, 1883, until February, 1884, when it was again submerged, and remained so till date of trial in June, 1884. It was also alleged that appellee refused to allow the embankment to be cut so as to drain a pond called Dry Pond, and would not allow proper culverts and sluices to be put in the embankment, but erected a water tank at the pond, and used the water thereof for running its engines, etc. Appellee filed a general denial. The case was tried on June 23, 1884, and resulted in a verdict for appellant for one hundred dollars.

The verdict was rendered on evidence conflicting as to the cause and extent of the damage.

*Clark & Dyer* and *Herring & Kelley*, for appellant, insisted that the verdict was not supported by the evidence, and on the propositions made by them, and referred to in the opinion, filed a written argument.

*R. C. Foster* and *A. E. Wilkinson*, for appellee, on the measure of damages, cited Sabine & East Texas Railway Company v. Joachimi, 58 Texas, 456; Texas Central Railway Company v. Clifton, Willson's Condensed Cases, vol. 2, pp. 3 and 4, sec. 489; Sutherland on Damages, vol. 3, p. 415, note 6; Redus v. Taliaferro, 2 Texas Law Review, 94.

That the verdict being a compromise verdict afforded no cause for reversal, they cited Handley v. Leigh, 8 Texas, 129.

That the charge was not on the weight of evidence, they cited Grimm v. Childers, 2 Texas Law Review, 324; 46 California, 346; 16 Ohio State, 334; 26 Pennsylvania State, 407–415.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellant against appellee to recover damages to appellant's land, alleged to have been caused by an embankment erected by appellee. Appellant obtained in the court below a verdict and judg-

ment for one hundred dollars, and because, as he claims, the damages are insufficient, he now appeals to this court.

That after the construction of appellee's road and embankment the land of appellant was overflowed and greatly depreciated in value there can be no doubt. But the stress of the case was upon the issue, whether the continuous overflow, which was proved, was the result of the embankment or was caused by an unusual succession of heavy rains. Incident to this was the further question: If the overflow was affected at all by the embankment, to what extent it was increased by that obstruction?

A large number of witnesses were examined upon these questions by both parties and the evidence is conflicting. It was peculiarly within the province of the jury to weigh the evidence, under these circumstances, and to determine the issues. Their verdict can not be disturbed, unless for errors in the proceedings of the court.

We will therefore consider the assignments in order. The first and second are presented together, and are as follows:

"First. The court erred in the fifth paragraph of the charge to the jury, wherein the measure of damages is stated to be 'the difference, if any, between the value of plaintiff's land before the construction of said embankment and the value of the same immediately after said damage, if any, was caused by said defendant.'

"Second. The court erred in not giving to the jury the special charge as to the measure of damages which would have corrected the error complained of in the preceding assignment, which charge was as follows: 'If the jury should find, under charges heretofore given, that the plaintiff has suffered damages by the erection and maintenance of said railway embankment, for which he would otherwise be entitled to recover of the Missouri Pacific Railway Company, under the law and evidence, by reason of said embankment being the original cause of the injury, the fact (if it be a fact) that in the present condition of the pond and the ground adjacent thereto the removal of the embankment originally erected would not cause the water to flow off, can not diminish, impair or defeat the right of the plaintiff to recover. If the jury find for plaintiff they will find for him such damages as have been caused by the defendant to this time, and the measure of damages is the difference in value of the land at the erection of the embankment and its present value, in the absence of any

evidence that the value of said land has been changed or diminished by other causes.'"

It is to be noted that the second assignment is not sustained by the record. What is called therein the special charge, was embraced in two separate instructions asked by appellant. The record shows that so much of the instruction quoted as is embraced in the first sentence was asked as a separate charge, and was given. That embraced in the second sentence was separately requested also, but was refused.

Ordinarily, the measure of damages resulting from overflows caused by the construction of embankments, is the loss resulting from each successive flood. But in this case it was alleged that the value of the land was permanently impaired by the destruction of a valuable pasture, and the damages claimed were the deterioration in the price of the property. So far as the record discloses, no question was made upon either side as to this being the proper measure of plaintiff's recovery, if he were entitled to recover at all. The appellant's proposition under the assignment is that the portion of the charge complained of in the first assignment "took from the jury the consideration of damage that may have resulted to plaintiff by reason of debris being deposited in the water ways, outlets and sluices of the pond while the land was for a long time flooded, which damage would not have resulted immediately after the overflow, but would have been the result of continuous deposit of sediment after the lapse of time from December 13, 1881, until July, 1883, and later."

We do not think the instruction obnoxious to the objection made to it in this proposition. It does not charge the jury that the measure of damages is the difference in the value of the land before the embankment was made and its value immediately after the first overflow that followed; but that it is the difference in value before the construction was made and immediately after the damage that resulted from defendant's act. This, we think, clearly means the difference between the value immediately before the erection and its value after all the damage caused by it had been done. This was correct, and in our judgment, as applicable to the evidence adduced, was not calculated to mislead the jury.

The fifth special charge asked by appellant had been substantially given in the instruction we have had under consideration, and therefore it was not error to refuse it.

The fifth assignment of error complains of the action of the

court in telling the jury, when they reported they could not agree, that there had been a mistrial at a former term in this cause, and that the business of the court and the interests of the country made it important for them to agree if it could be done. But to this action of the court no exception was taken at the time, and no bill of exceptions was prepared, tendered to and signed by the judge, after having been submitted by him to the opposing attorneys, as the statute requires. There appears in the record a statement of the fact that the judge used the language to the jury which is complained of in the assignment, and under the circumstances therein set forth; but we think this can not be considered.

In order to subject the action of the trial court to revision on appeal, it must be excepted to at the time. The office of a bill of exceptions is to show the proceedings of the court, which do not otherwise appear of record; and the mode of its authentication being provided by law, the mere statement of the judge, although written by him and signed officially can not be received as its substitute.

The fifth and sixth assignments of error are submitted with the same statement, and may be considered together. They are as follows:

"The verdict of the jury is manifestly a compromise verdict, and is contrary to law and not warranted by the evidence."

"The verdict is contrary to law and evidence in this. It finds one hundred dollars damages for plaintiff, thereby admitting his cause of action as alleged, when there was no conflict of evidence as to the measure of damage, and the very least amount of damages as shown by the evidence, without anything at all to the contrary, is thirteen thousand dollars. So the jury should have found a verdict under the law and evidence for this amount, and in this the verdict is entirely without, and not supported by any evidence, and is manifestly contrary to the law as charged by the court."

The evidence would doubtless have warranted a verdict for plaintiff for damages to a much greater amount than that found by the jury. It would also have sustained a verdict for the defendant. There were witnesses who testified that the standing of the water over the land and the consequent destruction of the pasture were wholly caused by defendant's embankment. There were about as many who gave evidence that they had known the land for many years and that the embankment did not affect

the flow of water from it. There were still others from whose testimony the jury were warranted in concluding that the embankment did somewhat affect the drainage of the land; but that the damage was in the main to be attributed to natural causes, and that the construction of the work contributed to it only to a very slight extent. A number of witnesses having sworn that the overflow was caused by the embankment, and others equally credible having sworn that it was not, it is not surprising that the jury concluded that the truth lay between the two extremes, and found that the work did affect the floods, but only to a very limited degree. Such being the case, we can not say that the jury found against the evidence upon the question of damages.

The objection that the finding of the jury is a compromise verdict is not well taken. We presume that but few verdicts are returned giving damages for a tort in which the amount is not the result of a compromise between the members of the jury.

The sixth assignment of error is that "the court erred in the last paragraph of the charge to the jury, which is as follows:

'You are further instructed that the law does not require the construction of sluices or culverts for the drainage of land, except that which naturally lays so that the water thereon will be naturally drained by the construction of such culvert and sluices. And if the jury find from the evidence that the water standing on Dry Pond at its present height has no natural connection with, or flow to the embankment at the north end of the railroad through plaintiff's lands, the defendant would not, in such case, be required to construct a culvert or sluice under such embankment through plaintiff's land, at said north end, for the drainage of the water standing in said Dry Pond at that point, unless you find that said Dry Pond is disconnected with said embankment at said point by the accumulation of debris between said Dry Pond and said embankment, caused by the construction of the same, thus preventing the natural flow of said water to said drainage, if any.'"

This charge is not liable to the criticism made upon it in the proposition under the assignment. It is clearly not upon the weight of the evidence; nor do we see that it was calculated to mislead the jury. It does not exclude from the consideration of the jury the question of the obstruction of the outlets in the southern portion of the pond, as appellant complains. The jury are merely told, in effect, that if the water did not naturally flow

out at the north end defendant was not bound to construct water ways there, except in case debris thrown up by the embankment had dammed the natural outlet at that point. The jury had already been instructed in substance that if the work caused the overflow plaintiff was entitled to recover, and the instruction now under consideration did not preclude them from finding that there may have been an outlet at the southern part of the pond which the embankment had obstructed.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered April 22, 1887.